Will the clerk please call the first case? 325-0574 Prime Healthcare Illinois Medical Group and St. Mary's Hospital, Kankakee, Appalachia v. Gaurav Kapoor, M.D., Appellant. 325-0574 Prime Healthcare Illinois Medical Group and St. Mary's Hospital, Kankakee, Appallant. Counsel, is it Wadilak? Wadilak. Wadilak. Okay, you may proceed. May it please the court. This is an interlocutory appeal from a preliminary injunction entered against Dr. Kapoor, a cardiologist who spent about 11 years at St. Mary's in Kankakee. After Prime proposed new, unfavorable employment terms and treated Dr. Kapoor poorly for not those new proposed employment terms, Dr. Kapoor gave Prime the contracts required 90-day notice of resignation and continued working for Prime. Before his last day, Riverside posted public welcome marketing about him. There is no evidence that Dr. Kapoor authored, approved, or even knew about Riverside's marketing. Prime identified no patient or employee he solicited or any misconduct. Prime then immediately terminated Dr. Kapoor early and obtained an injunction restricting his practice. Dr. Kapoor appeals from that preliminary injunction. This appeal turns on the legal limits of a preliminary injunction and the specific provisions of the party's employment contract, not on any credibility contest. Prime obtained an injunction enforcing and expanding post-termination restrictive covenants even though, one, Prime terminated Dr. Kapoor effective immediately without following the employment agreement's notice and cure structure. That agreement required Prime to give notice of the breach and an opportunity to cure, which is undisputed here that it did not do that. That triggered the agreement's waiver language, which results in the voiding of the restrictive covenants. Okay, counsel, your briefs are one or two pages just shy of the limit on your briefs on the Supreme Court rule, okay? They're 50 pages, and you have many, many arguments, okay? Am I correct? Many. That's correct. So, in your time you have for an oral argument, would you identify your strongest argument, clarify it, and then clarify the relief that you're seeking and why that strongest argument would grant you that relief? Of course, Justice. So, the preliminary injunction should be reversed for at least six separate reasons, and those six separate are the most important arguments here. Point one is that Prime did not prove a likelihood of success of the merits it needed to do to get a preliminary injunction, and it did not do so because Prime could not show likely success because their restrictive covenants are not enforceable on Prime's termination theory. The agreement's termination structure is important and key. It provides termination for cause and without cause, and the agreement sets out a notice and cure procedure for termination based on a breach or for cause, and separately defines 11 specific in narrow grounds for immediate termination. None of those immediate termination grounds apply here, Prime does not argue that they do. Prime terminated Dr. Kapoor immediately without honoring the cure mechanism for the kind of alleged conduct it claims. Prime says the breach was not curable, but solicitation by a third party is not one of those listed 11 grounds for immediate termination, so there's no merit to that argument, and at any rate, it would have been easily curable. The third party post by Riverside correctly identified Cole City as the location of Dr. Kapoor's anticipated place of practice, and to the extent that those posts could be inferred that he had already started at Riverside, it could have been corrected by A, removing the repost period or revising those posts to clarify the start date of September 23rd, but no opportunity was given to Dr. Kapoor. The second strongest argument... Back to these posts, you're saying that there'd be clarifying posts that could have been produced to negate the misperception that he is practicing now at the Riverside facility? Could you clarify that? Yes, we believe that Dr. Kapoor would have given the contracts required 30-day cure period that he could have easily have contacted Riverside to ask them A, either to remove the posts, or B, to further clarify their marketing welcoming posts at a bare minimum, including his anticipated start date of September 23rd. Okay, thank you. Dr. Kapoor believes the agreement's waiver and voiding provision of the covenants is dispositive for this case, especially if termination was without cause, which is what Dr. Kapoor alleges it was, or if it was for cause, which is what Prime is claiming it was. Prime didn't follow the 30-day notice and cure provision. Under the contract terms, Prime cannot terminate Dr. Kapoor summarily and still enforce post-termination restraints. Prime argues that it was an incurable breach, and so therefore a cure was not required, but the agreement does not create a free-floating incurable breach escape patch. The court's job is to enforce the contract as written, not add a new termination category because Prime disliked the conduct. The third main argument regarding the preliminary injunction is that Prime never proved an Article 8 breach. Article 8 of the parties agreement is the article that contains the restrictive covenants, the non-compete, and the non-solicitation provisions, and at the evidentiary hearing, Prime never proved an article breach whatsoever, and Prime's appellee brief here conceives that solicitation is irrelevant. However, Article 8 is post-termination by its text. That language specifically says that the restraint period is triggered for one year following termination. All of the alleged conduct here occurred during employment, not post-termination. Prime also cannot show that Dr. Kapoor solicited any patient. In fact, Dr. Kapoor did not solicit any patient as a matter of contract definition or under Illinois law. The agreement's patient non-solicit provision tells exactly what targeted conduct is prohibited and constitutes solicitation, and that includes direct patient contacts, patient lists, distributing business cards to patients, making copies of patients' records, et cetera. Prime's evidence is general marketing, third-party posts, not a single identified patient contact by Dr. Kapoor. So, based on the contract language itself, there was no solicitation, and under Illinois law, general advertising, especially by a third party, is not solicitation. Also, there was no proven breach of any employee solicitation that occurred as a matter of contract definition or under Illinois law. Likewise, there was no competitive misconduct that was identified by Prime as a matter of contract definition or under Illinois law. Third, the order goes beyond the agreement and regulates a non-party speech through Dr. Kapoor. The injunction must track the covenant the parties actually agreed to. A court may not improve a restrictive covenant by adding different restrictions or changing the covenant's trigger and scope. If the covenant is location-based, the injunction can't morph it into a patient location, facility location, or consulting prohibition. Prime argues practice medicine includes phone and consulting with patients located in the radius, even if the physician is outside of it. That is an expansion that converts practice within 20 miles and to treat any patient who is within 20 miles. If Prime wanted that, they had to draft it in the contract and they didn't. Prime relies upon malpractice and duty cases, but those cases do not answer a contract question. What within 20 miles modifies the physician's place of practice versus a patient's location? In addition, to the extent there is any ambiguity about this, which there's not, it is construed against Prime as the drafter. Third, the injunction compels Dr. Kapoor to instruct Riverside and essentially police its advertising. The agreement restricts Dr. Kapoor's conduct, but it does not deputize him to police a third party's marketing. Ordering him to control Riverside's advertising is an extra contractual restraint, and it creates contempt risk based on a non-party's actions. Fourth argument is that Rule 307 allows review and injunctions legality in overbreadth without a post-order clarification motion. Prime argues that Dr. Kapoor forfeited his arguments and that instead he should have sought clarification by the trial court. However, this appeal is not a nitpick about drafting form. It's a challenge to legal overbreath and contract rewriting apparent on face of the order. Rule 307 exists so the reviewing court can correct injunctions that exceed lawful bounds, and there's no requirement in Illinois law that a litigant file a post-trial motion before filing a Rule 307 appeal, especially since, as we know, Rule 307 is an expedited rule to get the appeal on file within 30 days of entry of the order. Even when preservation of an issue is debated, forfeiture limits the parties, not this court. The appellate court can reach pure legal issues on an adequate record. Point five is that the restrictive covenants at issue here are unreasonable in scope. Even if the court were to set aside the arguments made about contractual waiver and termination defects and reach the reasonableness of the restraint, prime geographic footprint relative to its non-competition restraint is independently overbroad. Case law states that where a legitimate interest exists, a restrictive covenant is enforceable only if it is no greater than is required to protect that interest, and the boundaries of any protectable interest may be limited by the type of activity, geographical area, and timeline. That's a reliable fire equipment company for Ardendendo. In Mohanty, the court's position restrictive covenant decision court upheld enforcement only because the restraint was confined to a nearly circumscribed area of a large metropolitan area. There, a two-mile or five-mile radius that would not impose undue hardship or impair access. Primes non-compete, by contrast, uses a 20-mile radius multiplied across multiple service locations, creating a sweeping exclusion zone that is far broader than Mohanty. Under reliable fire and Mohanty, that geographic outreach is not reasonable and cannot support preliminary injunction enforcement. If I could ask, is it the 20 miles or is it the six service areas? It's 20 miles from each of those six service areas. I understand that. Is your complaint about the 20 miles or the fact that the 20 miles, at least in your position, applies to six different service areas or whatever the service things were called? Sure, that it applies to each of those six different locations. Thank you. Okay, now I have the question. Okay, so we're talking geography here, right? Distances? Yes. You're using the comparison that in these other cases, they were in urban areas or higher populated areas. Is that correct? Yes, they were. Well, is that an app comparison? Well, no. Because in the bottom line, are we really talking about population? Yes, I would agree with that, Your Honor. Okay, thank you. This case is also similar to House of Vision, where the Illinois Supreme Court criticized and refused to enforce a non-compete whose combined geographic effect, because it ran from multiple office locations, created unrealistic boundaries and swept in an area containing over one half of Illinois' population and also extending into Wisconsin and Indiana. In other words, it functioned as a de facto regional ban rather than a narrowly tailored site-based restraint. Here, the restriction essentially bans a zone from Kankakee through the Chicago and the metro area. Further, PRIME's non-solicit provisions are overbroad as they are not limited to patients Dr. Kapoor actually treated or employees he had a working relationship with. If anything remains in this case relative to the preliminary injunction, it cannot exceed the contract's one-year period measured from termination. The agreement says duration of the restrictive covenants is one year from termination. PRIME's no-benefit-from-breach rhetoric cannot supply an extra month of restraint unless the contract includes tolling or extension language, which it does not here. Dr. Kapoor primarily asked this court to reverse and vacate the preliminary injunction in full. In the alternative, Dr. Kapoor asked that this court strike the extra contractual add-ons, including the patient facility and consulting prohibition and compelled third-party advertising restrictions and correct the duration to the contractual endpoint. And the geographical bounds of the non-compete are so broad that it should be declared unenforceable by the court. The scope of the patient and employee non-solicit are so broad that these provisions should also be declared unenforceable per assured partners. Thank you. Well, I have one other additional question at this time for you, counsel. So, as part of the relief, you want to modify the original employment agreement? No, your honor. So, how does that affect these? How many sites are there that have 20-mile radius around them? There's six sites that Dr. Kapoor worked out of. Now, you're arguing in the original employment agreement, or are you arguing that they're okay to have that? Well, yes and no. So, Dr. Kapoor understands the 20-mile restriction radius, but here, because there's six locations, it's just so overbroad that, yes, the non-compete, well, we believe it should be thrown out on its face for its overbreadth. We're not looking to have it modified. So, counsel, what is the northernmost point that the 20 miles would take us? I believe that's Evanston. Okay. So, in other words, the other side is arguing that they have a protected interest in patients in Evanston going to see Dr. Kapoor in Kankakee? Apparently.  I can follow up. I guess, my apologies, the term is service locations. I do apologize. But the agreement talks about service locations, and it says it's identified by the employer. Now, the employer in its brief and the judge in the order doesn't say that the 20 miles prohibited from each of the six locations that he worked at. In fact, the counsel for the hospital says that we're only interested in 20 miles from St. Mary's. The judge said 20 miles from St. Mary's and 20 miles from Beecher. So, I guess, and the agreement doesn't identify six. It says it's selected by the employer. How do you get to six, then? I'm just curious.  So, there's an addendum three and four to the employment agreement that lists Evanston, Aurora, and downtown Chicago as three other locations that Dr. Kapoor provided medical services at. And then he was primarily stationed in Kankakee at St. Mary's and at his clinic in Kankakee and also was in Beecher and Watsika for six. So, in other words, the agreement does specify that, correct? Correct, in the addendums. Which is merged into the employment agreement, right? That's correct. Any further questions from the court? I just have to ask, didn't one of those addendums specifically say that he could do independent work there and that the employer was not going to provide malpractice insurance? I believe that was in the event if he went into private practice. That would apply then. Thank you. Further questions from the court? No, thank you. Thank you. Appellate counsel, you may respond. Thank you. May it please the court. And my name is John Lechinger. I represent Prime. If I may start where we left off, I think it's important to go through the contract very carefully because I strongly disagree with Ms. Wadelach. Article 1 of the contract, as your honors have noted, specifically identifies the service locations. I almost forgot myself. Ms. Wadelach refers to two addenda, which if we look at them and see if I can find them. We look at this, I think she meant to say two amendments, which refer to them. If you look at the third amendment to the contract, amendment number three to the physician employment agreement, which is at E39. In the third whereas clause, it specifically says that the parties desire to amend the agreement to incorporate the foregoing changes to summary of activities in Exhibit C that was allowing him to take calls at other hospitals. It does not in any way reference or amend Article 1, which is the primary focus of the agreement when it comes to the scope. Likewise, if we look at the fourth amendment, which is what I believe Ms. Wadelach was referring to, fourth amendment in the 1, 2, 3, 4, 5, I think it's the fifth whereas and on page E42 of the record. Again, this was an amendment pursuant to Section 9.1, allowing the parties to amend Exhibit A to the agreement. Exhibit A has to do with compensation. There was never an amendment to the definition of service locations, which is why it wasn't just gratuitous. That's why we never asked to enforce the geographic scope beyond the 20 miles from St. Mary's, which includes one hospital, Riverside. So I think there's a significant, I'm not suggesting it's purposeful, but we've pointed this distinction out both below at the circuit court level during argument and in our briefing. And council well understands the agreement. The agreement does not amend scope. The scope is the service areas, which is specifically defined and never amended. The amendments are very, very specific. And what are those service areas? It's exactly what's written on Article 1, a medical center north on the campus of present St. Mary's Hospital. That's it. There have been no other determinations. It's just that hospital. You're in effect saying this is a red herring in terms of scope. I believe that's a fair statement. You're right. Okay, go ahead. Okay, thank you. And you said no, and you're saying that the judge was partially in error and including Beecher that I suppose. That's a fair question, and I don't know. I thought I think Beecher was included. Okay, I honestly don't know. Thank you. Let me ask you this. So, what did Dr. Kapoor himself do? Not anybody else, but what did he do to solicit patients of the giving a photo? Well, Dr. Kapoor was asked for the photo by the marketing department of Riverside hospital. He gave that's not a solicitation. What else have you got? As far as directly soliciting patients. When we target the target to social marketing, social media by Riverside with his permission. It's in the record that he that he expressly gave permission for that to be done. He denied that he gave express permission. The judge found based on the evidence that he gave permission to use this photo for advertising for solicitation. He found that it was disingenuous. He found that his explanation. Well, 1st, Dr. Kapoor testified several times that he had absolutely no idea of it. In the reply brief, I believe at page 10 for the 1st time. There's an argument that he actually tried to get Riverside to change the solicitation to identify his start date. That was never presented at the trial court level, but it's argued in the briefing in the reply at page 10. So it's hard to really understand what exactly Dr. Kapoor knew and didn't know. In addition, he went and sat. First of all, the picture that he gave was the St. Mary's website photo. So he's literally authorizing them to use his website photo from St. Mary's for Riverside advertisement and solicitation while he's walking the halls of our hospitals, seeing our patients referrals from other doctors still taking call. Okay, so he gave a photo and there's at least some some tacit. Permission on his end that that the other hospital do what they did. And there's now argument in the record that he knew about it and urged them to make it to advertise the start date. So there wouldn't be a problem for the plaintiffs was the way it was argued on page 10 of the reply. Was that before publication? It's hard to know because it was just a reference in the briefing and it was never argued in court. It was in court. He said, I had no idea and quote, unquote, what they do with my likeness is is up to them. He also testified that he couldn't even remember what his compensation was going to be and how it was structured during trial. So there's a lot of misremembering until something is convenient for Dr. Kapoor. And there were significant factual findings about his credibility during during the hearing and his evasiveness of answering questions. So, but I Justice Anderson, there were findings of two material breaches here, and I know you're focusing on the solicitation. I believe the evidence is I'm not going to say it's clear, but I think the judge heard a lot of testimony and made a factual finding that he believed that he was instructing and participating and giving permission for targeted solicitation. The other, I'm focused on all of it, and frankly, I think a lot of the case law from our courts on restrictive covenants is intellectually dishonest. And I think that there's plenty of case law out there to support a lot of different positions. It's a fair enough. In fact, I used to I used to work on these cases and I had one set of briefs for when our for when our company stole an employee and I had a different set of briefs for when we stole the employee. And it's just the cases are all over the place. I, I understand. And I think the Supreme Court has been very clear that enforcement of these types of covenants in this type of field is is ordinary course when the geographic and temporal scopes are are narrow. But I think the court also, in this case, Justice Anderson was looking at the totality of the facts here. Dr. Kapoor was the medical director for the cardiac group. There was a finding that he had breached the trust of crime by trying to encourage the other doctors to go private. He had their trust. He was and he was the investment. They invested in him to build this practice. So there was first a finding of lack of trust as the medical director. So he wasn't just a physician. He was in charge. And it came with a lot of benefits, including being allowed to expand and invest the capital of the hospital. So this isn't just an ordinary doctor. And this isn't just going to another hospital. This was going to the one competitor of St. Mary's. And potentially putting St. Mary's at risk of going out of business. That was those are the factual findings. So I understand. I understand your point. And I can't say that I actually have to set to brief ready to go. But I, of course, have argued both sides. I get it. And I, to be real frank with the court, there's a lot of times I say to my clients. We're not doing this. This isn't most of these cases ought to settle. And obviously, that's not you're not required to do that here. Thank you, your honor. While you're on the subject of what the trial judge determined, what's our standard of review on this case? Your honor, for everything other than the geographic, essentially the geographic limitations and the temporal limitations, the reasonableness of the agreement validity, everything else is abuse of discretion. And I believe it's I think the ultimate finding has to be against the manifest weight of the evidence that that comes directly from the case. And it's a lot of excited. So I don't think there's a challenge here on this, on the burden of proof standard of review. Okay, so again, just summarize what you just said. What's the standard review and a review? It'd be the other than a de novo review for the validity of the agreement, just the paper itself. Everything else would have to be against the manifest weight of the evidence. What about this termination issue? Thank you, your honor. And I think, again, there's a slight misreading of the agreement and attempt to try to combine two provisions. The judge found a material breach of the 90-day notice period, which is in section 6-2A, without cause. So that basically is a breach of Dr. Kapoor's voluntary termination without cause, which required the 90 days. Okay, he found a termination for breach under section 6-2B. What counsel has never ever stated or even written or stated to the court today, she'd written out of agreement. You look at section 6-2B, and she's right. There are references to a 30-day period, qualified. If either party, and this is at E-19, if either party materially breaches this agreement, and the breach is curable, that triggers the 30 days. The court found it wasn't curable, and therefore said it was appropriate to make it an immediate termination. Why did the court find it wasn't curable? I mean, I'd like a discussion of that. Okay. Can I finish one thought first? Which is to say, he actually went on to find that even if curable, Prime gave notice immediately in a letter as to what the issues were. Prime sent a complaint detailing what the issues were. And all the way through the hearing, up until the court ruled, the postings remained online. So he found that Dr. Kapoor, even with notice, refused to cure. But to answer your question, why was it not curable? And there was significant unrebutted testimony from Mr. John Lofty, who is, I believe, the executive vice president in charge of the Illinois hospitals. He's been in the hospital administration business for upwards of 16, 20 years. I don't remember exactly. He testified that within a few weeks of these postings, he did an analysis. And first of all, in his experience, he's never had a physician announced publicly a move to another hospital or practice while within that notice period. And the notice period is critical, as he testified, to allow the hospital to try to reroute patients to other doctors, make sure they're cared for, and in all candor, make sure we try to retain them. And it usually works. He testified that in his experience and at Prime, when that notice period is honored, their success rate is somewhere between 80% and 85% retention. As of the day of the two-day hearing, the analysis shows that already we were down to about 35% retention of Dr. Kvore's patients. This all happened within the span of about 30 days after the postings were up. We also see that with the Facebook postings, there's significant activity. I think somewhere between 300 and 400 likes. That's why it's targeted. I can't begin to tell you anything about Facebook. I've never been on it. But the algorithms are intended to target people who are searching hospitals, searching doctors. And the fact that within a couple of weeks, there were already almost 400 posts or 350 posts suggested significant penetration into the market by these solicitations. But when you look at just simply the breach of the 90-day period, it was incurable because we couldn't get the advantage of the extra 45 days or whatever it was to transition. We could no longer have him walking the halls with him posting his picture, our picture on the Riverside website and announcing, I'm here and I'm ready to serve you. So the deprivation of the 30 days or 45 days of the extra notice period was critical, couldn't be cured. The judge also found that the harm to our reputation, patients are already seeing that for cardiac care, we've lost another doctor to Riverside. And that was incurable. But whether your honors agree or not that it was incurable, either one. Well, first of all, I don't think there's a contest that the notice period breach was uncurable. We couldn't get that back and it already started to erode our retention. But with respect to just our reputation, this is a community where I believe healthcare is the number two generator of revenue in the Kankakee area. And there's two hospitals. So in fact, it was foreign to me at the beginning because I am closer to the Chicagoland area. The idea that one doctor would go to another hospital wouldn't be news. It's news in Kankakee. And it became news and it's hurting us and it hurt us. And he found those facts. All that evidence was unrebutted. I mean, I've got those are really the two points I wanted to address because I seem to be the court's focus with Ms. Waddillack. I'm open to other questions if the court has any. Other questions from the court? No. No, thank you. Thank you for your time, your honor. Thank you, counsel. Counsel, you may reply. Thank you. Going back to article one of the employment agreement where the term service locations is defined, counsel left out half that definition. Service location is defined as med center north on the campus of present St. Mary's Hospital and slash or at such other locations as determined by group. Dr. Kapoor testified that he worked at six different locations for the group. He worked in Evanston. He worked in downtown Chicago. He worked in Aurora. He worked in Kankakee. He worked in Beecher and he worked in Waseca. If counsel's position is that prime is only looking to enforce the non-competes with respect to the 20 miles only from St. Mary's and Kankakee, great. Then at minimum, the preliminary injunction needs to be modified based upon that admission here alone. Counsel makes a big deal about Dr. Kapoor providing a, having provided a photograph of himself to a future employer. Dr. Kapoor testified that he simply Googled his name and the first picture that's publicly available that came up of himself, he sent to his future employer. Illinois's case law is very, very clear that employees can prepare to compete as long as they're actually not competing. And again, we need to go back to the facts here. It was Riverside who made these welcome marketing advertising posts, however you want to refer to them too. It was not Dr. Kapoor. He did not even know they made these posts. He found out about the Facebook post after it was posted and as our briefs in the trial court and as well as the briefs submitted in this court show, once he found out about the Facebook post after it was posted by Riverside, he asked Riverside to clarify it by at least putting his start date and then also suggested that Riverside contact its legal counsel to determine whether it was proper or not. He did that. And in the trial court in subsequent hearings, counsel for Prime advised the court that the posts were no longer there. That shows that if Prime had followed the contract terms and gave Dr. Kapoor notice of his alleged breach of the agreement, that could have been cured. He was never provided the opportunity as the contract requires. We can't forget that. That is case dispositive here. And it's case dispositive because if he is, if we want to take the position, assuming arguendo, that he was terminated for cause, that contract requires him to be given the 30-day notice to cure. That was not done here. And the section 8.5 of the restrictive covenants section specifically says that Prime will waive enforcement of the restrictive covenants contained in this article if the group terminates this agreement without cause under section 6.2a or section 6.2d. And then the addendum to the employment agreement, specifically paragraph six, says section 8.1. I think addendums are agreements. Opposing counsel disagrees with your. It's the addendum to the employment agreement, section, paragraph six in there. And that says the restrictions contained in sections 8.1 and 8.2b shall immediately become null and void under either of the following conditions. A, PMG terminates the employment agreement without cause. And as for the other posts that were at issue at the evidentiary hearing, the Instagram post, and I believe it was a Kankakee news article, Dr. Kapoor actually had no idea those existed until the lawsuit was actually filed. That's clear in the record. And in addition, I believe the Kankakee article welcoming to Riverside was posted after he was already summarily terminated from prime and had begun or just was about to begin his employment at Riverside. Counsel keeps going back to this idea of credibility, but this is not a credibility contest. The record is so clear on the facts. The correct standard of review here is de novo review because that applies to contract interpretation, enforceability of restrictive covenants, the legal meaning of solicitation, and whether the injunction exceeds the party's bargain. And again, the Dr. Kapoor asked this court respectively to reverse and vacate the preliminary injunction in full. Any questions from the bench? No, thank you, Justice Holdridge. Okay, thank you. Thank you, counsel, both for your fine arguments in this matter this morning. It will be taken under advisement. A written disposition shall issue.